CHARLES B. FOGG & another *vs.* HENRY L. MILLIS.

Suffolk. Nov. 14, 1884. — Jan. 20, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

A. agreed to make a bar and sideboard for B. for a certain sum in cash. A. set up the bar and sideboard in B.'s saloon, and then demanded of B. the balance due. B. did not comply with the demand, and, a few days later, at A.'s request, signed a lease of the property, and also paid a sum on account. The lease provided that B. should pay A. a certain sum monthly until the whole amount due was paid, when the property should become B.'s. A. afterwards put two caps of wood on the sideboard. B. then mortgaged the property to C. to secure the payment of a debt, and subsequently made a monthly payment on the lease to A. The condition of the mortgage was broken, and C. in good faith took possession of the property, and removed and sold it, after a demand by A. *Held,* that it could not be ruled, as matter of law, that there had been an unconditional delivery of the property to B., and an acceptance by him prior to the making of the lease.

TORT for the conversion of a bar and sideboard. Writ dated January 24, 1883. The answer denied that the bar and sideboard were the property of the plaintiffs; alleged that one Harlin was the owner thereof, who had given a mortgage thereon to the defendant to secure a promissory note; and that, said note becoming due and unpaid, the defendant foreclosed said

mortgage, and took and sold the bar and sideboard in conformity therewith; and concluded with a general denial. Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows:

About November 1, 1882, Harlin went to the plaintiffs' store in Boston, and made an oral contract with them, the substance of which was that the plaintiffs were to make one ash and cherry bar and one ash and cherry sideboard for Harlin for $225 cash, and he paid $25 down. Very soon after, it was agreed that the plaintiffs were to have the bar and sideboard painted for an additional sum of $25, making the whole price $250. On November 17, the plaintiffs carried to, and set up in, Harlin's saloon a bar and the base or lower part or half of a sideboard, at which time $12 was paid. On November 20, the plaintiffs set up in Harlin's saloon the upper part of the sideboard. The bar and sideboard were set up, except as hereinafter mentioned, in pursuance of the contract before stated. When the top of the sideboard was set up, on November 20, the plaintiff Fogg was at Harlin's saloon, and then requested Harlin to pay him the balance due. Harlin said he did not have the money then, and requested a few days' time; and Fogg did not remove the bar and sideboard, but within two or three days again demanded payment. The balance remaining unpaid on November 25, the plaintiffs, suspicious of Harlin's responsibility, sent for him and told him he must then either pay the balance or sign a lease of the property; and Harlin, at the plaintiffs' store, on that day, paid $25 on account, and signed a lease in the ordinary form of a furniture lease, in which were recitals to the effect that Harlin had paid $62, and was to hire the property from the plaintiffs, and pay $15 a month on the same until the sum of $250 should be paid, and when that sum was paid the property was to become Harlin's. On November 26, the plaintiffs put two caps or pieces of wood on the extreme top of the sideboard. On December 18, Harlin made a payment of $15. No other contract was made between the plaintiffs and Harlin, and no conversation was ever had about a lease until November 25.

On December 12, 1882, Harlin, being indebted to the defendant, gave his promissory note secured by a mortgage of the

chattels in question to the defendant, and warranted them free from incumbrances. The defendant in good faith took formal possession of the goods on December 12, 1882, and on January 8, 1883, the note being overdue and unpaid, he removed the property, and sold the same on January 20 under his mortgage.

The plaintiffs and the defendant first learned of their adverse claims on January 8, 1883. The plaintiffs made a demand for the property on January 18, 1883. No question was made that the defendant converted the goods, if the title remained in the plaintiffs and did not pass to Harlin.

The defendant, offering no evidence, requested the judge to order a verdict for the defendant on the evidence; but the judge declined so to do. The jury returned a verdict for the plaintiffs in the sum of $265; and the defendant alleged exceptions.

*E. R. Champlin,* for the defendant.

*J. M. Olmstead,* for the plaintiffs.

W. ALLEN, J. The defendant contends that it is an inference of law from the facts stated, that there was an unconditional delivery of the property by the plaintiffs to Harlin on November 20. The plaintiffs were to make the articles and set them up in Harlin's saloon for a certain sum in cash. They commenced setting them up on November 17, and had not entirely finished on November 20, when they requested payment of the whole balance, there having been small payments made. Harlin replied, that he did not have the money then, and requested a few days' time. The plaintiffs did not remove the property; and it is contended that allowing it to remain, after demand for the price, was in law an unconditional delivery of it, and made it the absolute property of Harlin. So far from being conclusive, we think the evidence of delivery was very slight. The fact that the articles were in Harlin's saloon when finished was of slight consequence, because they were to be finished there, and were not to be delivered until finished. Some act showing a delivery by the plaintiffs and acceptance by Harlin, after they were finished and ready for delivery, was necessary to deprive the plaintiffs of their right of possession. Delivery was to be made upon payment, and might have been inferred if payment had been made and accepted; but could not be presumed from

the mere fact that the articles remained where and as they were when completed. The plaintiffs retained the right to take them away at any time.

Besides, the articles were not completed then, and Harlin had a right to refuse to accept and pay for them on that day. That he gave.another reason for not making payment then is not conclusive in law that he did not exercise his right to refuse to accept them.

The subsequent conduct of the parties shows that they understood that there was no change of possession on that day, for soon after Harlin accepted a lease of the property from the plaintiffs, and after that the plaintiffs finished the work upon it.

*Exceptions overruled.*